AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
SEP 20 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
iPhone with black outer casing with unknown IMEI, S/N, )
and Model Number seized from Alexander CACHU )
(Target Phone 2) )

Case No. **19MJ4079**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A2.

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952 & 960 | Importation of a Controlled Substance |

The application is based on these facts:

See attached affidavit from SA Evans

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Cole Evans, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/19/19

*Judge's signature*

City and state: San Diego, California    Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT**

I, Cole Evans, Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by HSI Special Agents for the following target property: two cellular phones, collectively referred to as (the **Target Phones**).

   (1) Samsung cellular phone, with IMEI: 353522095926651, S/N: R38K50JJ89J, and MEID (D): 089267456905842533 – pictured in Attachment A1 (**Target Phone 1**);

   (2) iPhone with black outer casing with unknown IMEI, S/N, and Model Number seized from Alexander CACHU – pictured in Attachment A2 (**Target Phone 2**).

2. The **Target Phones** were seized on August 29, 2019, from Alexander CACHU, at the San Ysidro Port of Entry (POE), San Diego, California in the Southern District of California when he entered the United States from Mexico. It is believed that the **Target Phones** were used by CACHU to communicate with co-conspirators during a drug smuggling event on August 29, 2019. On that date, CACHU was arrested after driving his vehicle that was found to have approximately 26.12 kilograms (57.58 pounds) of methamphetamine concealed within a speaker box located in the trunk of his vehicle. The **Target Phones** are currently in the possession of HSI San Ysidro Office, 2255 Niels Bohr Court, San Diego, CA 92154, located within the Southern District of California.

3. Probable cause exists to believe that the **Target Phones** contain evidence relating to violations of Title 21, United States Code Sections 952/960 (Importation of a Controlled Substance).

1

4.      Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B will be found in the items to be searched as described in Attachment A. These items may be or lead to evidence of the violations described above.

## TRAINING AND EXPERIENCE

5.      I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since October 2017. I have successfully completed the Criminal Investigator Training Program (CITP) and the Homeland Security Investigations Special Agent Training (HSISAT) Program at the Federal Law Enforcement Training Center (FLETC). I have training and experience in multiple investigative areas, and I have been cross-designated by the Drug Enforcement Administration to conduct investigations and make arrests based on violations of Title 21, United States Code. My federal law enforcement experience, combined with my HSISAT and CITP training, has given me the experience and knowledge of how Drug Trafficking Organizations (DTOs) operate. I have worked as the case agent; directing specific drug-related investigations, worked as a surveillance agent, observing and recording movements of individuals trafficking in drugs and of those suspected of trafficking in drugs. I have also initiated and executed arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. Furthermore, I have interviewed defendants and witnesses relating to the illegal trafficking of controlled substances. I am presently assigned to a Contraband Smuggling Group in San Ysidro, California, and my duties include investigating the illicit movement of controlled substances into the United States. Prior to my employment as a Special Agent, I was a Naval Explosive Ordnance Disposal (EOD) Officer and Platoon Commander. I hold a Bachelor's of Science degree in Mathematics from the United States Naval Academy.

6. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, social networking sites, and voice messages.

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

      d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

      e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

      f. Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

      g. Drug smugglers with often have more than one phone during a smuggling event. Multiple phones provide a communications redundancy as well as serving as a decoy. Oftentimes drug smugglers will have one active phone and one phone that appears to be dead or inoperative. Drug smugglers will state that the inoperative phone is not in use in order to direct law enforcement attention away from any inculpatory information located on the phone.

      h. Even if a phone is powered off or the battery is dead, inculpatory information is preserved on the phone and can be recovered. Information such as location data, text message conversation and photos are preserved while the phone remains in a dormant state.

9. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause

in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

10. On August 29, 2019 at approximately 7:10 p.m., Alexander CACHU attempted to enter the United States via the San Ysidro POE. CACHU was the driver, sole occupant and registered owner of a white Chevrolet Cobalt bearing California License Plates.

11. A Customs and Border Protection Officer (CBPO) working vehicle primary lane 19 encountered CACHU and received two negative customs declarations prior to requesting that CACHU open the vehicle's trunk. While inspecting the vehicle's trunk, the CBPO observed a speaker box and tapped it with a screw driver. The CBPO noticed that it felt solid. Additionally, the CBPO observed that the speaker box felt abnormally heavy. The CBPO then referred the vehicle to the secondary lot for further inspection.

12. Upon entering the secondary lot the vehicle was driven through the Z-Portal and examined by a CBPO. The CBPO observed anomalies in the speaker box located in the trunk of the vehicle.

13. Following the Z-Portal scan, the vehicle was screened by a Human and Narcotics Detection Dog. The canine alerted to a trained narcotic odor at the speaker box located in the vehicle's trunk.

14. A 7-Point inspection of the vehicle was conducted by a CBPO. The inspection resulted in the discovery of ten packages concealed in the vehicle's speaker box. The ten packages contained 26.12 kilograms of a white crystalline substance that field tested positive for methamphetamine.

15. The CBPO placed CACHU under arrest. At the time of arrest, CAHCU was in possession of **Target Phone 1** which CBPO seized. **Target Phone 1** is a Samsung cellular phone, with IMEI: 353522095926651, S/N: R38K50JJ89J, and MEID

(D): 089267456905842533. CACHU was also in possession of **Target Phone 2** which has an unknown IMEI, S/N, and Model Number. **Target Phone 2** is an iPhone with a black outer casing.

16. At approximately 11:00 p.m. SA Evans made contact with CACHU and asked him if the **Target Phones** belonged to him. CACHU responded that the **Target Phones** did belong to him. CACHU further stated that he did not use **Target Phone 2**, which was dead at the time.

17. Government crossing records indicate that CACHU crossed in his 2009 Chevrolet Cobalt on August 29, 2019 (date of arrest), and seventeen other occasions in 2019. The vehicle is registered to CACHU at PO Box 113 Tecate, CA 91980.

18. CACHU was arrested and referred for prosecution for Importation of a Controlled Substance in case 19-MJ-3694. CACHU was unavailable on August 30, 2019 and September 3, 2019, so his initial appearance was held on September 9, 2019. At that time, CACHU pled not guilty, and conditions of release were set. CACHU's next date is a preliminary hearing scheduled for September 19, 2019, and CACHU remains in custody.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of CACHU and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like Facebook, pictures, location data, and other digital information are stored in the memory of the **Target Phones** described herein.

//
//

6

## SEARCH METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the **Target Phones** and subject them to analysis. All forensic analysis of the data contained within the **Target Phones** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

23. Based on all of the facts and circumstances described above, there is probable cause to conclude that CACHU used the **Target Phones** to facilitate the offense of importing methamphetamine. The **Target Phones** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952 and 960.

24. Because the **Target Phones** were seized during the commission of the offense and has been stored in a secure location, there is probable cause to believe that evidence of illegal activity committed by CACHU continues to exist on the **Target Phones**.

//
//
//
//
//
//
//
//
//

25. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B are likely to be found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

_____
COLE EVANS
HSI Special Agent

Subscribed and sworn to before me this 19 day of September, 2019.

_____
HON. WILLIAM V. GALLO
United States Magistrate Judge

9

## ATTACHMENT A2
## PROPERTY TO BE SEARCHED

The property/item to be searched is described as:

(1) iPhone with black outer casing with unknown IMEI, S/N, and Model Number seized from Alexander CACHU (**Target Phone 2**).



**Target Phone 2** is currently in the possession of DHS and is being held as evidence in the Southern District of California.

## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular phone described in Attachment A1 and Attachment A2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone. The seizure and search of the cellular phone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Phones** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from July 1, 2019, to and including August 29, 2019:

a. tending to identify attempts to import methamphetamine, or some other controlled substance from Mexico and distribute the controlled substance in the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling and distribution of methamphetamine or some other controlled substance from Mexico into, and through, the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling and distribution of methamphetamine or some other controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the smuggling and distribution of methamphetamine, or some other controlled substance, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

The seizure and search of the cellular phone shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone may be searched for the evidence above.